UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY

In re:

JAMES WALTER GALLIMORE andCase No. 07-50126
VIVIAN GAIL GALLIMORE

DebtorsChapter 7
_____

VERNON WARNER

Plaintiff

vs.Adv. Proc. No. 07-05009

JAMES WALTER GALLIMORE

Defendant

MEMORANDUM OPINION

THIS CORE PROCEEDING[1] comes before the Court on the Complaint Objecting to Discharge Pursuant to 11 U.S.C. § 727 and 11 U.S.C. § 523 ("Complaint"), filed by Vernon Warner, a creditor in the underlying bankruptcy ("Plaintiff").  In his Complaint, the Plaintiff alleges that James Gallimore, one of the debtors in the underlying bankruptcy ("Defendant"), should be denied a discharge because he concealed property with intent to defraud the Plaintiff or an officer of the estate in contravention of 11 U.S.C. § 727(a)(2)(A).[2]  Finding that the

---

[1] 28 U.S.C. § 157(b)(2)(J).

[2] The counts of the Plaintiff's complaint under 11 U.S.C. § 523 were bifurcated by order of the Court and will be litigated in a separate hearing.

1

Plaintiff failed to meet his burden of proof under 11 U.S.C. § 727(a)(2)(A), the Court finds in favor of the Debtor/Defendant.

## FINDINGS OF FACT

The Plaintiff purchased a hydraulic automobile transport trailer from the Defendant in March 2004 for $15,000. Pursuant to his verbal agreement with the Defendant, the Plaintiff paid for the trailer in two cash installments on consecutive days, which he left at Bluegrass Auto Transport ("Bluegrass"), a trucking company located in Puryear, Tennessee, that employed the Defendant. Because the Defendant, an over the road trucker, was in California at the time the Plaintiff picked up the trailer, the original title for the vehicle was not available for delivery. A few days later, the Plaintiff returned to Bluegrass to pick up the title, but refused to accept the title because the Defendant had not signed it. The parties agreed to finalize the sale (have the title notarized) upon the Defendant's return from California.

Sometime within the following two weeks, a police officer had the trailer impounded because the Vehicle Identification Number ("VIN") affixed to the trailer did not match the VIN on the title.[3] At this point, the Plaintiff refused to finalize the sale, demanding instead that the Defendant return the $15,000 purchase money. The Defendant refused, and the Plaintiff initiated a state court lawsuit to recover the purchase money.

According to the Defendant's testimony, the original VIN plate was corroded and had fallen off the trailer, so he made a new VIN plate and affixed it to the trailer. The Defendant testified that any difference between the digits on the original VIN plate and the replacement

---

[3] The trailer was impounded for an apparent violation of KRS 186A.310 ("Selling or receiving of vehicle with identification number removed or altered prohibited").

VIN plate he fabricated was mistaken rather than fraudulent.

The Defendant offered conflicting testimony regarding the disposition and location of the $15,000 since the Plaintiff delivered the money to Bluegrass.  During a deposition for the state-court lawsuit initiated by the Plaintiff, the Defendant testified that he had given the $15,000 to his daughter, Vicki Gallimore Nance ("Vicki"), as a gift.  During his meeting of creditors, the Defendant testified that Vicki had picked up the money for him, that he had never spent or gotten any benefit from this money, and that Vicki was still in possession of it at that time.  Gail Gallimore ("Gail"), the Defendant's wife, was present while the Defendant made this statement during the 341 meeting and did not dispute his account.  Additionally, the Plaintiff testified that, at some point during negotiations for the purchase of the trailer, the Defendant stated that he would use the money to purchase certificates of deposit in preparation for his retirement.

The Defendant, Gail, and their son, James Gallimore Jr. ("James"), all offered testimony during trial that after Vicki picked up the $15,000 from Bluegrass and gave it to James, who in turn put the money into his bank safe deposit box because the Debtors did not have a checking account.  James testified that he distributed the money back to the Debtors in small increments as they needed it over the following few years and that the Debtors had exhausted the $15,000 around the time they filed their bankruptcy petition.

Gail testified that both she and the Defendant knew that Vicki gave the money to James to keep in his bank's safety deposit box.  When questioned by counsel for the Plaintiff about the inconsistencies between the Defendant's testimony at the 341 meeting (that the $15,000 should still be in Vicki's possession) and the testimony Gail and the Defendant offered at trial (that James gave them the $15,000 in small increments to pay bills until it was gone), both testified

simply that Gail was responsible for money management and the Defendant must not have understood where the money came from or where it went.  When questioned further about the inconsistent testimony offered by the Defendant at his state court deposition, *viz.*, that the money was a "gift" to Vicki, Gail testified:  "Well, I—it was given.  I think that's what he meant—that it was just given to her to put it in the bank for us."  Gail acknowledged, however, that she did not correct the Defendant's statement during the 341 meeting that the money should still be in Vicki's possession and that he had received no benefit from the money, even though she had corrected him at other points during the 341 meeting.

Gail also testified that the $15,000 they purportedly had James keep for them was the only money they had ever had placed in a bank deposit box.  The Defendant owned a Peterbilt truck outright that he also sold to an unnamed third party sometime around the time he sold the trailer to the Plaintiff.  The Defendant could not remember exactly when, to whom, or for how much money he sold the truck.  Gail testified that the Defendant sold the Peterbilt truck for roughly $11,000, and that this money was also used to pay bills, but it was not kept in any safe deposit box or checking account.

## CONCLUSIONS OF LAW

The Plaintiff's complaint alleges that the Defendant should be denied a discharge under 11 U.S.C. § 727(a)(2)(A).  11 U.S.C. § 727(a)(2)(A) states in pertinent part as follows:

(a) The court shall grant the debtor a discharge unless—
. . .

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted

4

>> to be transferred, removed, destroyed, mutilated, or concealed—
>>> (A) property of the debtor, within one year before the date of the filing of the petition . . . .

This provision should be liberally construed in favor of the debtor. *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000). The party objecting to a debtor's discharge under 727(a)(2)(A) bears the burden of proof by a preponderance of the evidence. *Buckeye Retirement Co. v. Swegan (In re Swegan)*, 383 B.R. 646, 654 (6th Cir. B.A.P. 2008).

To prove nondischargeability under 11 U.S.C. § 727(a)(2)(A), the petitioner must prove two elements: "(1) a disposition of property, such as concealment, and (2) a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act disposing of the property." *In re Keeney*, 227 F.3d at 683 (quotations omitted); *see also Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237, 1240 (9th Cir. 1997).

In the case *sub judice*, the Plaintiff highlighted several inconsistencies between statements the Defendant and Gail made during the 341 meeting of creditors, the state court deposition, and the trial. The conflicting statements made regarding the whereabouts and disposition of the money are so mutually exclusive that the Court does not believe they were made by mistake. Additionally, the fact that the Defendant and Gail would have James safeguard the $15,000 cash received from the Plaintiff in his safe deposit box but would not ask that James do the same with the roughly $11,000 in cash produced by the sale of the Peterbilt truck around the same period of time is dubious. Moreover, the Defendant's inability to recall even the most basic facts regarding the sale of the Peterbilt truck is remarkable.

Nonetheless, the Debtors did not have a checking account, and James testified that he held the proceeds from the sale of the trailer in his safety deposit box and gave money to the

Debtors as it was required. Testimony was offered that the proceeds had been spent over time on day-to-day living expenses, and the proceeds were eventually exhausted. The Court found James's testimony credible. The Defendant was off work for several months after a heart surgery operation in 2005, so it is feasible that their household could expend $15,000 on living expenses during this time. Although these inconsistencies cast a pall on the Defendant and Gail's credibility, the Plaintiff failed to prove by a preponderance of the evidence that the Defendant concealed assets with the subjective intent to hinder, delay, or defraud a creditor.

The conflicting testimony given at the 341 meeting, the state court deposition, and the October 18, 2007 hearing leaves the Court with the impression that the Debtors are willing to lie under oath. The Plaintiff has not, however, met its burden of proof simply by establishing that The Defendant and Gail lack credibility. Proving nondischargeability under 11 U.S.C. § 727(a)(2)(A) requires proving that a debtor had a subjective intent to defraud a creditor or the bankruptcy estate, and the Plaintiff in the case *sub judice* has fallen short of this burden. Accordingly, the relief sought by the Plaintiff is DENIED.

A separate Order consistent with the foregoing has been entered in accordance with Federal Rule of Bankruptcy Procedure 9021.